IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00799-RBJ

ROBERT B. JARRELL,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Robert B. Jarrell's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other

evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Mr. Jarrell was born in 1952 and is now 65 years old. *See* R. 96. He has not completed any formal education beyond the eleventh grade. R. 98, 283. Mr. Jarrell's work history includes time spent as a delivery driver, a production supervisor on a manufacturing line, a painter, and a carpenter. R. 98–101, 342. He was most recently employed as a deck builder in Ogden, Utah but has not been employed since that project ended on August 1, 2013. R. 98, 282. Mr. Jarrell moved from Utah to Colorado soon after the job ended. R. 282. Initially homeless and sleeping on the streets of Fort Collins, Mr. Jarrell has since secured low-income housing in Denver. R. 97, 246, 314.

In 1974 Mr. Jarrell was injured in an auto accident and received treatment for a back injury. R. 373. Nearly twenty years later he was diagnosed with depression and an anxiety disorder. *Id.* In 2010 Mr. Jarrell was diagnosed with gout. R. 413–14. His health history also reflects alcohol, tobacco, marijuana, cocaine, and methamphetamine use. R. 354, 375. Significantly, since 2000 Mr. Jarrell has suffered from Dupuytren's contractures that restrict his ability to extend the fourth and fifth digits of his left hand and the fifth digit of his right. *See, e.g.*, R. 102, 390. In 2009 surgery was performed to alleviate the contractures in Mr. Jarrell's left

2

hand.  R. 421–22.  The surgery did not entirely resolve the contractures in his hand and a 2015 medical examination notes a "gradual reoccurrence" of symptoms.  R. 390.  Mr. Jarrell has chosen not to undergo subsequent surgeries due to the fact that any solution would be only a "temporary fix" for the contractures.  R. 102, 391.

### A. Procedural History.

On November 1, 2013[1] Mr. Jarrell applied for disability benefits and social security insurance, alleging disability beginning August 1, 2013.  R. 241.  Both claims were initially denied on April 21, 2014.  R. 150.  Mr. Jarrell filed a written request for a hearing before an Administrative Law Judge ("ALJ") on June 20, 2014.  R. 154.  His hearing before ALJ Patricia E. Hartman was to be held on October 6, 2015, but in response to Mr. Jarrell's claim that the medical record was incomplete, the ALJ postponed the hearing to December 1, 2015.  R. 174, 347–48, 208.  Before the hearing Mr. Jarrell requested that the ALJ order a consultative examination specific to his Dupuytren's contractures.  R. 351.  Mr. Jarrell pointed to newly-received correspondence from a doctor recommending such an exam.  *Id.*  Because the ALJ found the record already complete with a consultative report, she denied Mr. Jarrell's request for an additional consultative exam.  R. 74.

The hearing was held before the ALJ on December 1, 2015.  R. 92.  The ALJ issued a decision denying benefits on February 2, 2016.  R. 71–91.  The Appeals Council denied Mr. Jarrell's request for review on January 30, 2017, rendering the ALJ's determination the final

---

[1] Though the discrepancy is immaterial, the Court notes that the parties refer to different filing dates.  *See* ECF No. 14 at 2 (plaintiff identifies October 13, 2013); R. 74 (the ALJ identifies October 30, 2013); R. 241 (plaintiff's application summary identifies November 1, 2013).

decision of the Commissioner for purposes of judicial review.  R. 1.  Mr. Jarrell then filed a timely appeal in this Court.

### B. The ALJ's Decision.

The ALJ issued an unfavorable decision after evaluating the available evidence according to the SSA's standard five-step process.  R. 71–91.  First, she found that Mr. Jarrell had not engaged in substantial gainful activity since August 1, 2013, the alleged onset date of his disability.  R. 77.  At step two, the ALJ found that Mr. Jarrell had the severe impairments of Dupuytren's contractures and a history of polysubstance abuse in partial remission.  R. 25.  At step three, the ALJ concluded that Mr. Jarrell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 79.

The ALJ then found that Mr. Jarrell retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels subject to the following nonexertional restrictions: he can finger unlimitedly but can only engage in fingering that requires the use of the first three digits on each hand for actual manipulation with the last two digits to be used only for support; he cannot climb ladders and scaffolds; he cannot work in extreme cold; he cannot work at unprotected heights; and he cannot work with dangerous unprotected machinery.  R. 79–80.

At step four, the ALJ concluded that Mr. Jarrell is unable to perform any past relevant work.  R. 85.  At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Jarrell can perform.  R. 86.  Accordingly, the ALJ concluded that Mr. Jarrell is not disabled.  R. 87.

**ANALYSIS**

Mr. Jarrell contends that the ALJ erred in her assessment of his physical condition by: (1) failing to adequately develop the record regarding his Dupuytren's contractures; and (2) improperly weighing medical opinion evidence about his lifting limitations and his limitations in social functioning. The Court will address each argument in turn.

A. **Development of the Record.**

Mr. Jarrell first contends that the ALJ erred by failing to adequately develop the record in his case because there was insufficient medical testing to support the RFC indicated in the ALJ's decision. Specifically, Mr. Jarrell asserts that the ALJ improperly declined to order a new consultative exam as recommended by a reviewing physician. ECF No. 14 at 4. Dr. Kerry Kamer conducted a consultative exam of Mr. Jarrell's hands in April 2014. *Id.* She opined that Mr. Jarrell "may be limited to performing fine motor activities with both hands to occasionally-frequently, based on exam findings today." R. 379. One year later, in April 2015, Dr. Meryl Livermore performed another exam on Mr. Jarrell's hands, but because she could not assess his manipulative capacity she recommended that he obtain a functional capacity exam. R. 389. Mr. Jarrell argues that the ALJ should have ordered such an exam, implying that in his case there was "an indication of a change in condition but the current severity of the impairment is not established." ECF No. 14 at 4 (citing 20 C.F.R. § 416.919a). Even assuming for the sake of argument that Mr. Jarrell had provided any evidence of a change in his condition—which he failed to do—his contention misconstrues the ALJ's discretion as dictated by the regulations.

It is the claimant's burden to prove he is disabled. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). However, it falls to the ALJ to "ensure that an adequate record is

developed . . . consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61; *see also Baca v. Dep't of Health and Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993) ("[T]he ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues."). This duty to develop the record "may require" ordering a consultative examination, but the ALJ "has broad latitude" in determining whether to do so. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). The Tenth Circuit has indicated that "the ALJ should order a consultative exam when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. The Circuit has identified three instances when such an examination may be necessary: "where there is a direct conflict in the medical evidence requiring resolution"; "where the medical evidence in the record is inconclusive"; and "where additional tests are required to explain a diagnosis already contained in the record." *Id.*; *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (describing situations that may require a consultative examination). However, even when "the current state of the record suggests that a consultative exam may be necessary, we leave the decision whether to order a consultative exam up to the ALJ." *Madrid v. Barnhart*, 447 F.3d 786, 792 (10th Cir. 2006).

Mr. Jarrell's argument that 20 C.F.R. § 416.919a mandated that the ALJ order a new consultative examination in his case reads too much into the regulation. Instead, the regulation provides that an ALJ "*may* purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination." 20 C.F.R. § 416.919a(b) (emphasis added). Examples of when an ALJ "*might* purchase a

6

consultative examination" include when "[t]here is an indication of a change in your condition that is likely to affect your ability to work . . . but the current severity of your impairment is not established." *Id.* at 416.919a(b), 416.919a(b)(4) (emphasis added). Thus, the regulation plainly affords the ALJ broad latitude to determine whether a consultative examination is required in a given case. In this case, the ALJ properly exercised her discretion in finding the record sufficiently developed on the issue of Mr. Jarrell's contractures.

In considering Mr. Jarrell's Dupuytren's contractures, the record before the ALJ included evidence from Mr. Jarrell's initial disability report, his hearing request, his function report, testimony from his hearing, surgical records, and opinions by Drs. Kamer and Livermore. R. 79–82. In his hearing, for example, Mr. Jarrell testified that he could hold a glass of water, write, button buttons, groom himself, cook dinner, wash dishes, vacuum, do laundry, and take out the trash, all of which are activities that require the use of one's hands. R. 106, 108. However, the ALJ's finding that the record was sufficiently developed on this issue was primarily based on her review of the opinions of Drs. Kamer and Livermore. In finding that a second consultative physical examination was unnecessary, the ALJ emphasized that Dr. Kamer's consultative report from 2014 was sufficient, and that moreover both Drs. Kamer and Livermore "clearly describe objective findings relating to [Mr. Jarrell's] contractures." R. 74.

Dr. Kamer's 2014 report noted that one finger on Mr. Jarrell's right hand and two on his left were affected by the contractures, but the report stated that Mr. Jarrell exhibited full grip strength bilaterally and retained fine motor function that was "intact and slightly limited to finger-thumb." R. 81, 378. After Dr. Kamer performed a functional assessment of Mr. Jarrell, the doctor found that "[Mr. Jarrell] may be limited to performing fine motor activities with both

7

hands to occasionally-frequently," but recommended "no other manipulative limitations . . . such as reaching, pushing, pulling, handling, grasping, fingering, and/or feeling." R. 379. Although the ALJ rejected Dr. Kamer's limitation as too restrictive, she was satisfied that this examination provided sufficient medical evidence about Mr. Jarrell's contractures. R. 74.

While Dr. Livermore's 2015 report lacks the depth of Dr. Kamer's, it too identified that Mr. Jarrell experienced limited motion in the fourth and fifth digits of his left hand and the fifth digit of his right. R. 388. The report further indicates that Mr. Jarrell has "5/5 grip strength bilaterally." R. 391. However, Dr. Livermore noted that she was unable to assess the percentage of time during an eight-hour workday that Mr. Jarrell could use his hands for certain tasks, so she recommended that Mr. Jarrell undergo a functional capacity evaluation. R. 89; *see also* R. 352. Though Mr. Jarrell emphasizes the fact that Dr. Livermore recommended a functional capacity exam, *see* ECF No. 14 at 5, there is no indication that she did so because of a perceived inadequacy in Dr. Kamer's report one year earlier. Indeed, there is no indication that Dr. Livermore even knew about Dr. Kamer's report. Instead, Dr. Livermore's recommendation for a consultative exam apparently reflects only her inability to conduct the relevant tests. *See* R. 389. Moreover, although Dr. Livermore indicates that the contractures are "gradually worsening in nature," there is no indication from Dr. Livermore's report of any change in Mr. Jarrell's symptoms attributable to his Dupuytren's contractures. R. 390.

Because the record before the ALJ, including Dr. Kamer's consultative exam, provided substantial medical evidence about Mr. Jarrell's Dupuytren's contractures and his abilities notwithstanding the contractures, the ALJ properly exercised her discretion when she denied Mr.

8

Jarrell's request for a new functional capacity evaluation. R. 74. As such, I decline to overturn her decision on these grounds.

### B. Evaluation of Medical Sources.

Mr. Jarrell next argues that the ALJ erred by improperly evaluating opinion evidence concerning both his lifting limitations and his limitations in social functioning. An ALJ is required to evaluate and assign weight to every medical opinion she receives according to the six factors set out in 20 C.F.R. § 404.1527(c).[2] Those factors are:

> (1) the examining relationship between the physician and the applicant;
> (2) the length, nature, and extent of their treatment relationship;
> (3) the strength of the evidence supporting the opinion;
> (4) the consistency of the opinion with the record as a whole;
> (5) the physician's specialty; and
> (6) any other factors, such as the physician's familiarity with disability programs and the extent of his familiarity with other information in the record, that tend to support or contradict the opinion.

*Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (unpublished) (distilling 20 C.F.R. §§ 404.1527(c), 416.927(c)).

While the ALJ must consider these factors to the extent they are relevant in the case, she does not need to explicitly discuss them all with respect to each medical opinion in the record. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Still, the ALJ "'must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the . . . medical opinion and reasons for that weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

---

[2] Social Security regulations regarding the evaluation of medical opinion evidence were amended effective March 27, 2017. Where, as here, an ALJ's decision is the final decision of the Commissioner, the reviewing court applies the law in effect at the time of the ALJ's decision. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012) ("We refer to the regulations in effect at the time of the ALJ's decision."). Accordingly, citations to 20 C.F.R. § 404.1527 are made in reference to the version of that section in effect from August 24, 2012 to March 26, 2017.

Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5)). The ALJ is entitled to reject a medical source opinion but only if she provides "specific, legitimate reasons" for doing so in her decision. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The regulations further guide the ALJ that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). The Court may not reweigh the medical opinion evidence or substitute its judgment for that of an ALJ. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

1. Evidence of Mr. Jarrell's Lifting Limitations.

Mr. Jarrell asserts that the ALJ improperly evaluated evidence of his lifting limitations at two points in her decision. First, he argues that the ALJ failed to provide any reasons for affording little weight to Dr. Kamer's opinion that he is limited to a reduced range of medium lifting and carrying. Second, he takes issue with the ALJ's interpretation of Dr. Livermore's report concerning his lifting limitations. Based on the record and applicable law, I find that the ALJ did not err in her evaluation of the opinion evidence concerning Mr. Jarrell's lifting limitations.

a. Dr. Kamer's Report.

As noted above, in April 2014 Dr. Kamer evaluated Mr. Jarrell and produced a consultative exam report. R. 373–79. Dr. Kamer noted that the exam resulted in "an overall unremarkable functional evaluation." R. 379. Relying on the exam and limited medical records, Dr. Kamer concluded with respect to Mr. Jarrell's weight bearing that: "The amount of weight

10

that he should be able to lift is approximately 20 lbs. frequently, and 40 lbs. occasionally. The amount of weight that he should be able to carry is approximately 20 lbs. frequently, and 40 lbs. occasionally." *Id.* Dr. Kamer also determined that Mr. Jarrell possessed grip strength of "5/5." R. 378. The ALJ recited Dr. Kamer's functional assessment and afforded it "some weight." R. 83. The ALJ explained that Dr. Kamer's report was "consistent with the relatively unremarkable physical examination." *Id.* Further, the ALJ determined that the doctor's report suggests Mr. Jarrell's only limitations were related to his Dupuytren's contractures. *Id.* Given that conclusion, the ALJ noted that she did not agree with Dr. Kamer's opinion that Mr. Jarrell was limited to a reduced range of lifting and carrying because "examiners have consistently documented that he has retained full grip strength." *Id.*

Mr. Jarrell disputes the ALJ's decision to give no weight to Dr. Kamer's conclusion about Mr. Jarrell's weight-bearing abilities because, he argues, the ALJ "does not give any reasoning for her statement." ECF No. 14 at 6. He argues that labeling "the doctor's opinion as unremarkable does not amount to an analysis" sufficient for giving the opinion no weight. ECF No. 18 at 2. Furthermore, Mr. Jarrell disputes the ALJ's conclusion that Dr. Kamer's decision was based only on Mr. Jarrell's Dupuytren's contractures, noting that his "chronic degenerative changes of the lumbar spine" and swelling knee could have formed the basis of the decision instead. ECF No. 14 at 6.

Mr. Jarrell apparently seeks to have this Court reweigh the evidence and offer its own interpretation of Dr. Kamer's conclusion about Mr. Jarrell's weight-bearing abilities, which I decline to do. Instead, I find that although a court could interpret Dr. Kamer's findings differently, the ALJ's interpretation—that the report showed Mr. Jarrell's limitations were

11

related only to his contractures—was reasonable and supported by substantial evidence. *See* R. 379 (With respect to other potential causes of Mr. Jarrell's limitations, Dr. Kamer's report notes only that "[c]urrent lumbar radiology notes mild multi-level degenerative changes. Current left knee radiology was unremarkable . . . . His medical condition appears to be stable."). Additionally, in deciding to afford little weight to Dr. Kamer's opinion about Mr. Jarrell's weight-bearing, the ALJ properly considered the regulatory factors. Specifically, the ALJ considered the opinion's consistency with the record as a whole as well as the strength of evidence supporting the opinion in determining to afford it little weight. *See* R. 83 (noting that "examiners have consistently documented that he has retained full grip strength."). As a result, I find that the ALJ properly assessed Dr. Kamer's report and her decision is supported by substantial evidence.

b. Dr. Livermore's Report.

Mr. Jarrell also appears to dispute the ALJ's treatment of Dr. Livermore's conclusion about his weight-lifting abilities. *See* ECF No. 14 at 6. Although there is little in Dr. Livermore's report relating to Mr. Jarrell's lifting abilities, the doctor did produce a "Ø" in response to the prompt "Please state any weight lifting limitations." R. 389. The ALJ found that this "reference to zero suggests no limitation rather than a recommendation the claimant not engage in any lifting," and she noted that this conclusion was "reasonable and consistent with the record documenting no loss of grip strength." R. 82. As a result, the ALJ afforded "some weight" to Dr. Livermore's responses. *Id.* Mr. Jarrell does not articulate any particular dispute with the ALJ's treatment of Dr. Livermore's opinion about his weight-bearing limitations. *See*

12

ECF No. 14 at 6. I am satisfied that the ALJ adequately considered and explained the weight she assigned to this opinion given its consistency with the record as a whole.

2. Evidence of Limitations in Social Functioning.

Mr. Jarrell last contends that the ALJ afforded improper weight to reports authored by two psychologists, Drs. Rebecca Shtulman and Gayle Frommelt, who each assessed his limitations in social functioning. The ALJ considered both psychologists' opinions but afforded "little weight" to either.[3] R. 84. Mr. Jarrell argues that "[t]here is no possibility of determining whether the ALJ gave the psychologists['] reports due consideration, or whether the weight assigned was for good reasons." ECF No. 18 at 3. He also faults the ALJ for "rely[ing] entirely" on the fact that Mr. Jarrell was not inappropriate with any medial provider to establish social functioning. ECF No. 14 at 6. Based on the record and applicable law, I find that the ALJ did not err in her evaluation of the psychologists' medical opinions.

a. Dr. Shtulman's Report.

On April 11, 2014 Dr. Shtulman completed a psychological evaluation of Mr. Jarrell who was referred to her office by Disability Determination Services ("DDS"). R. 380–87. After reviewing the records DDS provided and conducting both a clinical interview and a mental status examination, Dr. Shtulman opined that Mr. Jarrell "appeared to experience a depressive disorder, an anxiety disorder, and a substance use disorder of marked severity." R. 385. She noted that while he "was competent to manage his funds without assistance," "displayed no limitations in

---

[3] The Commissioner properly points out that at step two in her assessment the ALJ found that "there was no medically determinable impairment related to any mental disorder." R. 78; *see* ECF No. 15 at 12. Mr. Jarrell does not dispute this finding. As such, the ALJ was not required to assess Mr. Jarrell's alleged mental impairments in determining his RFC. However, at step two the ALJ also found in the alternative that Mr. Jarrell's mental health conditions were at the very most non-severe. R. 79. As a result, the ALJ considered Mr. Jarrell's alleged mental health conditions at step four in determining his RFC. R. 83–85.

his ability to sustain concentration and perform at a consistent pace," and "appeared to comprehend the purpose of the evaluation," he displayed some mild impairments in judgment, insight, and abstract reasoning. *Id.* Dr. Shtulman further opined that "Mr. Jarrell had marked limitations in his ability to request assistance, accept instructions or criticism, and get along with coworkers, supervisors and the public due to symptoms of anxiety and depression." *Id.* However, Dr. Shtulman also observed that "Mr. Jarrell was courteous and cooperative . . . had adequate social skills . . . made good eye contact . . . [and] did not display any behaviors which may limit him in a social or occupational setting." R. 383.

The ALJ recited Dr. Shtulman's opinion and afforded it "little weight." R. 84. Contrary to Mr. Jarrell's contention, the ALJ supported her conclusion about Dr. Shtulman's opinion by explaining that "the record as a whole does not support the various medically determinable mental impairments identified in the report." *Id.* Elsewhere in her decision, the ALJ catalogued Mr. Jarrell's mental complaints, including his statements that "he would 'really rather be left alone,'" that he has problems getting along with others in the workplace, and that change and stress increase his anxiety and distress. R. 80. The ALJ thus considered what evidence the record contained of Mr. Jarrell's alleged mental impairments and found this evidence inconsistent with Dr. Shtulman's opinion. In assigning little weight to Dr. Shtulman's opinion, the ALJ also noted that "no records show that he has been inappropriate when interacting with others," including medical providers or examiners. R. 78, 84. Furthermore, the ALJ noted that she could not "determine fully what statement or evidence Dr. Shtulman relied on to find a marked limitation in social functioning." R. 84. As a result, I am satisfied that the ALJ properly

14

articulated the weight to assign Dr. Shtulman's opinion by discussing the opinion's consistency with the record as a whole and the strength of the evidence supporting the opinion.

### b. Dr. Frommelt's Assessment.

On April 21, 2014—soon after being seen by Dr. Shtulman—Mr. Jarrell was assessed by another psychologist, Dr. Frommelt. R. 141–46. Considering the information contained in Dr. Shtulman's and Dr. Kamer's reports, Dr. Frommelt opined that the record supported a number of impairment diagnoses including: (1) anxiety disorders; (2) affective disorders; and (3) substance addiction disorders, all of which she classified as "severe." R. 141–42. Nonetheless, Dr. Frommelt identified that Mr. Jarrell was friendly and appropriate at his examination, had good social skills, had no understanding or memory limitations and could follow instructions, and had no significant limitations in other work-related social skills. R. 144–45. Dr. Frommelt considered Dr. Shtulman's opinion, and deemed it "an overestimate of the severity of [Mr. Jarrell's] restrictions/limitations and based only on a snapshot of [his] functioning." R. 146. In particular, she noted that "Dr. Shtulman's assess[ment] of marked social limitations is not [consistent with] his normal interactions and good social skills." R. 144. Dr. Frommelt further determined that Mr. Jarrell "retains the ability to do work of limited complexity that could be learned in [three months'] time. He can manage social interactions that are not frequent or prolonged." R. 132.

The ALJ considered Dr. Frommelt's opinion and afforded it "little weight." R. 84. Although the ALJ found Dr. Frommelt's assessment "reasonable in light of Dr. Shtulman's opinion," the ALJ was not persuaded by Dr. Frommelt's findings that Mr. Jarrell's affective or anxiety disorders were medically determinable impairments. *Id.* As noted with respect to Dr.

15

Shtulman's opinion, the ALJ noted that these findings were inconsistent with other evidence in the record. *Id.* Further, the ALJ determined that even if the record did support related medically determinable impairments, Mr. Jarrell's failure to seek out treatment for the alleged conditions supports a conclusion that the disorders, if present, were not severe. *Id.* I find that the ALJ properly weighed Dr. Frommelt's opinion because she evaluated the consistency of the opinion with the record as a whole, including Mr. Jarrell's treatment history.

In sum, substantial evidence supports the ALJ's decision about the weight to assign the medical opinions both with respect to Mr. Jarrell's lifting limitations and with respect to his limitations in social functioning.

**ORDER**

For the reasons described above, the Court AFFIRMS the Commissioner's decision denying claimant Robert B. Jarrell's application for Disability Insurance Benefits and Supplemental Security Income.

DATED this 26th day of February, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge